NELSON STOCKWELL *vs.* INHABITANTS OF FITCHBURG.

A highway was located anew in 1850, and between one side of the highway, as relocated and a row of buildings was a strip of land. *Held*, that the use of this strip by the public for twenty years would not make it a highway for whose defects the town would be liable under the Gen. Sts. *c.* 44, § 22, unless the twenty years were subsequent to 1850.

Between the side of a street in a town and a hotel and adjoining building was a strip of land. The town, having raised the street, agreed with the owner of the hotel to raise the grade of that part of the strip which lay between the hotel and the street, and to lay a uniform brick sidewalk from the curbstone, which was within the limits of the street, to the wall of the hotel, the owner of the hotel to pay the expense of the work within the strip, and a separate account thereof being kept. The owner of the adjoining building raised the grade of the strip in front of the building, himself, but the town agreed to lay a uniform brick sidewalk from the building to the curbstone at their own expense, and the owner agreed to release all claim against the town for damages on account of the change of grade. The agreement was carried out. There was no division between the part of the sidewalk within the limits of the street and the part without. A traveller going from the hotel diagonally across the strip, before he reached the line of the street, fell into a cellar in the strip in front of the adjoining building, and was injured. *Held*, that the town had not made repairs on the strip within the Gen. Sts. *c.* 44, § 26, and that it was not liable for the accident under § 22.

TORT under the Gen. Sts. *c.* 44, § 22, to recover damages for personal injuries occasioned by the plaintiff's falling on April 27, 1871, into a cellar stairway, alleged to be a defect in Main Street, a highway in the central village of Fitchburg, which the defendants were bound to keep in repair. Trial in the Superior Court, before *Devens*, J., who, after a verdict for the defendants, allowed a bill of exceptions of which the following is the material part:

"The alleged defect consisted of an excavated passageway leading down by a series of stone steps to the cellar of a building belonging to Lyman Patch, and known as Patch's Block, situated easterly from and fronting on Main Street, and of an improper and insufficient railing on two sides of said passageway and want

of railing elsewhere. The sidewalk on the easterly side of Main Street indicated the boundary on three sides of the passageway. Reference may be had to the plan * used at the trial. For the purpose of showing the existence of a highway, which the defendants were bound to keep in repair, over that portion of the sidewalk lying between the easterly line of a highway relocated in 1850, and Patch's Block and an adjoining hotel, called the Rollstone House, the plaintiff introduced evidence of the use by the public of this portion of the sidewalk as a way for a period of more than forty years. The defendants introduced evidence that within ten years part of said portion had been temporarily inclosed up to the located line of the highway. The plaintiff asked the judge to rule that if the jury were satisfied that there was an actual, public, general and uninterrupted use of the way in question, for the period of twenty years, without reference to the time of the relocation, a way over said portion of the sidewalk would be shown by prescription, which the defendants would be under obligation to repair; but the judge declined so to rule, and ruled that it was incumbent upon the plaintiff, in order to establish a way by prescription, to show such use for a period of twenty years subsequent to the relocation.

---

* The material part of the plan is here given. The dotted line indicates the line of the street as relocated.

Rollstone House.

Patch's Block.

10.35 ft.

4.73 ft.

14.35 ft.

5.3 ft.

2.7 ft.

Curbstone.

**Main Street.**

" For the purpose of showing that the defendants had made repairs within six years upon the way in dispute within the provisions of the Gen. Sts. *c.* 44, § 26,* the plaintiff introduced as a witness George W. Holman, who testified ' that he had charge of the sidewalk as one of the selectmen of the town ; that the town put in the brick in front of Patch's Block in 1869 ; that the whole of the brick was laid by the town ; that the grade was changed in front of Patch's Block, and raised about eight inches on both sides of the passageway ; that the stairway was lengthened ; that previous to 1869 there was flagging stone outside, and gravel inside of the walk ; that the owners of the Rollstone House agreed if the town would raise the grade and brick it the whole way up to the line of the house, they would pay the expense; that a separate account was made and charged to said owners ; that in front of Patch's Block bricks up to the line of the building were relaid at the expense of the town on both sides of the passageway to the cellar ; that the steps were raised at Patch's expense and the work done by him ; that the bricks in front of Patch's Block were relaid at the expense of the town ; and that Patch agreed to make no claim for damage for raising the grade of the highway in front of his block.' Upon this testimony, the jury having previously viewed the way in dispute, the plaintiff contended that there was evidence to be submitted to the jury that the defendants had made repairs upon the way in dispute within six years ; but the judge ruled that the evidence was insufficient to show such repair of the way by the defendants as would render them liable by reason thereof.

" From the testimony of the plaintiff it appeared that he entered the Rollstone House from Main Street at about nine o'clock in the evening ; that he remained there until about half past ten o'clock ; that he then left the house for the purpose of going for

* " If on the trial of an indictment or action brought to recover damages for an injury received by reason of a deficiency or want of repair in a highway, townway, causeway, or bridge, it appears that the county, town, or person, against whom such suit is brought, has, at any time within six years before such injury, made repairs on such way or bridge, such county, town, or person shall not deny the location thereof."

his horse to a stable, which was situated near Main Street on the opposite side thereof and several rods below ; that in passing directly from the Rollstone House to the stable, no other street would be entered ; that the night was exceedingly dark and rainy ; and that he was not certain that before the accident he crossed the easterly line of the highway relocated in 1850 ; but that he went in the general direction and course of Main Street, when he was precipitated into said passageway. It also appeared that the sidewalk was continuous and of uniform surface on both sides of the easterly line of the relocated highway, except at the passageway to the cellar ; that the bricks were so laid that the easterly line of the relocated highway passed through the centre thereof, so that the same bricks were partly within and partly without the highway as relocated, and were so laid as to lap or intersect throughout the whole width of the walk up to the line of the buildings ; that there was no indication of the limits or boundaries of the highway at the point in dispute, except two stone bounds, the tops of which were on a level with the side-walk , and that the brick sidewalk extended to the front line of the buildings. Upon this evidence the plaintiff contended that it was not incumbent upon him to show that after leaving the Rollstone House, and before the accident, he crossed the easterly line of the highway relocated in 1850 ; but the judge instructed the jury that it was incumbent upon the plaintiff to show that after leaving the Rollstone House, and before the accident, he travelled within the limits of the relocated highway, unless they should be satisfied that a way by dedication or prescription had been acquired. The jury returned a verdict for the defendants, and the plaintiff alleged exceptions."

*G. F. Verry & F. A. Gaskill,* for the plaintiff. Land adjoining a located way may become a public way by prescription. *Commonwealth* v. *Old Colony & Fall River Railroad Co.* 14 Gray, 93, 95. It does not appear whether the portion of the sidewalk in question had become a public way in 1850 by prescription or otherwise ; unless it had so become, the relocation could not operate as a discontinuance. Even if it had so become, the relocation could not affect the rights of the public in it, for it was a different way from that included in the old way.

The reason of the statute making repairs upon a way conclusive as to its location is that, by an open and notorious act, the town holds it out as a public way. The citizens see the town making repairs, and have a right to rely upon that. No private agreement between the town and an abutter can affect their rights.

A traveller may recover for an injury received while not on the highway, especially where the portions of the road within and without the located way are of uniform surface, where no visible objects mark the boundary between them, and where they are in the general direction of travel. *Hayden* v. *Attleborough,* 7 Gray, 338. *Alger* v. *Lowell,* 3 Allen, 402.

*G. A. Torrey,* for the defendants.

CHAPMAN, C. J. The accident happened in the central village of Fitchburg, and on or near Main Street. It appears by the plan that on the easterly side of the street is the hotel called the Rollstone House, and a building adjoining it called Patch's Block. Main Street was relocated in 1850, and its easterly line as relocated appears on the plan. There was evidence tending to show that the public had used the space between the easterly line of the relocation and the Rollstone House and Patch's Block for more than forty years, by travelling over it, and it is contended that it thereby became a way by prescription. But the presiding judge ruled that it was incumbent on the plaintiff, in order to establish a way by prescription, to show such use for a period of twenty years subsequent to said relocation. This ruling was correct. An existing highway may be located anew, either for the purpose of establishing its boundary lines or of making alterations in its grade or course or width. Rev. Sts. *c.* 24, § 9. Gen. Sts. *c.* 43, § 12. This implies that the road is discontinued so far as any part of it is excluded from the new boundaries. *Commonwealth* v. *Westborough,* 3 Mass. 406. *Bliss* v. *Deerfield,* 13 Pick. 102. *Bennett* v. *Clemence,* 6 Allen, 10. *Bowley* v. *Walker,* 8 Allen, 21. These authorities are not contradicted by *Johnson* v. *Wyman,* 9 Gray, 186. The case is unlike that of *Sprague* v. *Waite,* 17 Pick. 309. It is immaterial how it was originally established. If by prescription, the effect of a new location would

be the same. After such new location and discontinuance, it would be necessary for the public, in order to gain a prescriptive right of way over an additional tract of land by the side of the road, to do so by a user of twenty years.

The plaintiff's accident did not happen within the limits of the highway as relocated, but between the highway and Patch's Block. There was a brick sidewalk extending from the easterly curb line to the buildings, with nothing to indicate the line of the street. Within the lot belonging to Patch's Block, and some distance from the east line of the street, there was a cellar-way, with stairs, into which the plaintiff fell, it being very dark. He was coming from the Rollstone House, and it did not appear that he had been within the limits of the street before he came to the cellar-way. He fails to show, therefore, that when he came upon the defect complained of he was travelling upon any way in which the defendants were under obligation to provide for his safety.

It is further contended that there is evidence that the town made repairs upon this place within six years before the time of the accident, and therefore is liable under the Gen. Sts. c. 44, § 26. It appears that the work referred to was done in 1869. The town had raised the grade of the street. Patch raised the steps of his cellar-way, and raised the grade of the land between his block and the sidewalk. The town relaid the bricks upon it, and he was to make no claim for damage for raising the grade of the highway in front of his block. The work done under this contract cannot be regarded as such a repair of the way as is contemplated by the statute. It was done not for the town, but for Patch, as a compensation for damages to the owner of the land for which the town was liable in consequence of having raised the grade of the street. There was no evidence to go to the jury on this point.

It is also contended that even if the cellar-way was not within the limits of the highway, this action may be maintained, there being no visible objects to mark the boundary between the highway and that part of the brick walk which lies beyond it. But towns are not obliged to erect railings for the mere purpose of preventing travellers from passing beyond the limits of the high-

way. Railings are necessary when defects are in such close proximity to the travelled way as to make it unsafe to travel upon it and near its boundary, and not otherwise. *Sparhawk* v. *Salem,* 1 Allen, 30. *Macomber* v. *Taunton,* 100 Mass. 255. *Murphy* v. *Gloucester,* 105 Mass. 470. There was no obligation upon the defendants to mark the boundary of the highway upon the brick sidewalk. *Exceptions overruled.*